UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Number: 05-430 |
| v. | : | |
| | : | VIOLATION: 29 U.S.C. §439 |
| RICHARD LYTER, | : | (False Entry in Books and Records) |
| Defendant. | : | |

FILED
DEC 13 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, Richard Lyter, under penalty of perjury, agrees and stipulates, to the following facts in connection with his plea of guilty as follows:

Between April 1999, and March 2001, Defendant Richard Lyter (hereinafter "the Defendant"), was employed as the Executive Assistant to the General Secretary-Treasurer of the International Brotherhood of Teamsters (IBT) located at 25 Louisiana Avenue, N.W., Washington, D.C. The IBT is an international labor organization representing approximately 1.4 million workers in various fields of employment and is subject to the Labor-Management Reporting and Disclosure Act of 1959. Defendant's duties as Executive Assistant to the General Secretary-Treasurer included developing budgets, updating the IBT's financial policies and reestablishing the IBT's internal financial controls, including policies relating to the use of IBT-issued credit cards.

While he was Executive Assistant to the General Secretary-Treasurer, defendant was issued an IBT credit card to use for expenses incurred in the course of conducting union

business. The prevailing policies and procedures established at IBT made it clear that the credit card was not to be used for personal expenses. Personal expenses could not be charged on the union credit card then repaid at the end of the month. Union officials who incurred expenses while conducting union business were required to complete a voucher to be reimbursed for out of pocket expenses. A voucher also had to be completed to justify expenses incurred on a union credit card. When defendant charged a meal on his union credit card, he was required to write the appropriate information on the meal receipt and complete an activity report on the voucher listing details of the meal. These details included the date, time and place of the meal, the persons present at the meal and how the meal related to official union activity. After completing a voucher, defendant would submit the voucher to the General Secretary-Treasurer of the IBT for approval. The General Secretary-Treasurer, who had known defendant for more than 20 years, trusted defendant and signed off on defendant's vouchers without reviewing them.

In early 2001, the IBT requested that the Thomas Havey Company, an accounting firm, review expense reports for select IBT officers and personnel, which included defendant. SH of the Thomas Havey Company conducted the review of defendant's expense reports. While doing so, SH noticed that his name and the names of other Thomas Havey Company partners were listed as having been present at meals on expense reports submitted by defendant. SH knew that the information on the expense reports was false because he had not been present at the meals where defendant had listed his name. SH contacted one of his partners, who stated to SH that he was not present at any of the meals where defendant had listed his name. SH then confronted defendant with these discrepancies. During that confrontation, defendant admitted to SH that he had falsified the expense reports and that the meals he claimed to have had with SH were actually personal meals defendant had with his wife. In a March 2001, letter to IBT's General

President and the IBT Trustees, SH summarized his findings and placed the loss at approximately $3,800.

On March 13, 2001, defendant resigned from his position as Executive Assistant to the General Secretary-Treasurer at the IBT. At that time, defendant tendered a check to IBT in the amount of $3,400 which was intended to represent reimbursement for the personal meal expenses defendant improperly charged to his union credit card. Defendant subsequently reviewed copies of expense reports he had previously submitted for approval. Defendant indicated the personal portion of each charge on the relevant expense report then forwarded marked copies of the reports to his attorney. On July 23, 2001, defendant repaid an additional $9,734.50 to IBT for personal expenses he charged to his union credit card.

In March 2001, the IBT informed the Office of Labor-Management Standards (OLMS) of defendant's actions and provided OLMS with a copy of SH's March 2001 letter. The subsequent investigation conducted by the OLMS Washington District office revealed that from April 1999, when defendant was appointed Executive Assistant to the General Secretary-Treasurer, until he resigned his position in March 2001, defendant used the credit card issued to him by the IBT to pay for over 300 personal meals. None of these charges had been authorized by the IBT. For each of these improperly charged meals, defendant submitted false expense reports to the IBT. In order to make the meals appear to be legitimate union expenditures, defendant completed the relevant expense reports with false business purposes and/or the names of IBT employees, officers and vendors who were not present at the meals. Defendant submitted each of the false expense reports to the IBT who subsequently provided defendant with monetary reimbursement for the costs of the meals. Defendant admitted to several IBT officials and vendors that he charged personal meals on his union credit card and then falsified expense

vouchers to hide the fact that the meals were personal. During the less than two year period that he served as Executive Assistant to the General Secretary-Treasurer, defendant falsified over 300 expense vouchers and embezzled $14,137.24 in union funds by claiming personal meals as business expenses.

Date: 10/14/05

_____
RICHARD LYTER
Defendant

I have read each of the four pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 10/25/05

_____
THOMAS PUCCIO, ESQUIRE
Attorney for the Defendant